# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ALEX WATSON AND ANTHONY GORDON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>v.<br><br>ADVANCED DISTRIBUTION SERVICES, LLC, AMBASSADOR PERSONNEL, INC., and EXPRESS SERVICES, INC.,<br><br>    Defendants. | Case No. 3:13-cv-0263<br>Judge Aleta A. Trauger |

## MEMORANDUM

Plaintiffs Alex Watson and Anthony Gordon have filed a Motion for Conditional Class Certification and Court-Authorized Notice (Docket No. 52) ("Motion to Certify"), to which the defendants filed a Response in opposition (Docket No. 59).

## BACKGROUND

Advanced Distribution Services, LLC ("Advanced") employs "loaders" to load and unload trucks at Advanced's facility in Smyrna, Tennessee.[1] Defendants Express Services, Inc. ("Express") and Ambassador Personnel, Inc. ("Ambassador") are temporary staffing agencies that assign employees to work as loaders for Advanced at the Smyrna facility. Plaintiffs Watson and Gordon, along with five other individuals who have submitted affidavits in support of the instant motion, were assigned by Express or Ambassador to work as loaders for Advanced at the

---

[1]These employees also are referred to as "unloaders," "sorters," "materials handlers," and/or "dock hands."

Smyrna facility. In their Second Amended Complaint, Watson and Gordon, on behalf of themselves and all others similarly situated, allege that the defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), by failing to pay them overtime compensation.[2]

In the court's Initial Case Management Order, the court permitted the parties to conduct discovery limited to the issue of conditional certification. (Docket No. 38.) Following the end of that discovery period, Gordon and Watson filed the instant Motion to Certify, in which they ask the court to conditionally certify this case as a collective action on behalf of all loaders who worked for the defendants during the past three years, corresponding to the maximum time frame for "willful" violations of the FLSA. In support of their motion, the plaintiffs have filed (1) affidavits from seven current or former loaders at the Smyrna facility (including the two named plaintiffs and five other loaders), (2) a copy of a March 22, 2013 report by the Department of Labor ("DOL") concerning its independent investigation into whether Smyrna loaders were entitled to overtime pay (the DOL concluded that they were not), and (3) a copy of a loader job description produced by the defendants. In response, the defendants argue that (1) the affidavits filed by the plaintiffs in support of their motion do not establish that the other Smyrna loaders are "similarly situated," and (2) even if the court finds that conditional certification is warranted, the plaintiffs' proposed Notice must be amended for several reasons. Notably, the defendants have not contested the authenticity of the DOL report or the job description, nor have the defendants presented any rebuttal evidence.

## STANDARD FOR CONDITIONAL CERTIFICATION

---

[2]At least for purposes of the instant motion, the defendants have not disputed that they should be treated as "joint employers" under the FLSA.

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009). Once a collective action is certified, however, employees seeking to join the class must opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the proposed opt-in plaintiffs. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546.

At the first stage, the plaintiff bears the burden of showing that the employees in the class are similarly situated. *Shabazz v. Asurion Ins. Serv.*, 2008 WL 1730318, at *3 (M.D. Tenn. April

10, 2008). At that point, "'the certification is conditional and by no means final.' The plaintiff must show that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *Comer*, 454 F.3d at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in . . . certification.'" *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Shabazz*, 2008 WL 1730318, at *3 (stating that plaintiffs "must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]") (quotation marks omitted). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.[3]

---

[3]The defendants cite to several district courts within this circuit for the proposition that, where plaintiffs have already had a substantial opportunity to conduct discovery on the issue of conditional certification, the plaintiffs must show at least "modest" factual support for the collective allegations in their complaint. *See Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009); *Bacon v. Eaton Aeroquip, LLC*, 2012 WL 6567603, at *3 (E.D. Mich. Dec. 17, 2012); *Jiminez v. Lakeside Pic-N-Pac, LLC*, 2007 WL 4454295, at *2 (W.D. Mich. Dec. 14, 2007). It is unclear to this court how the "modest factual support" required in these cases differs from the "modest factual support" requirement referenced in *Comer*. For example, in *Pacheco*, the district court stated that, where limited discovery related to conditional certification had been conducted, it would "requir[e] the plaintiffs to demonstrate at least 'modest' factual support for the class allegations in their complaint" and would "base its certification determination on the evidence rather than pleadings." 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009). Thus, although *Pacheco* did not reference *Comer*, it seems to have adopted essentially the same standard discussed in *Comer*. *See also Bacon*, 2012 WL 6567603, at *3 ("[T]he court should have *some evidence* before it demonstrating a widespread discriminatory

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583; *Shabazz*, 2008 WL 1730318, at *3 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547. During the second stage, the following factors may be considered: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [a] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations . . . ." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006) (quoting *Thiessen v. Gen. Elec. Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001)); *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 851 (N.D. Ohio 2013). "Stated otherwise, in considering decertification, the question is simply whether the differences among the Plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 994 (W.D. Tenn. 2011).

Here, the motion concerns only the first of these two phases.

## ANALYSIS

**I.** **Legal Context**

Although the court need not resolve the merits of the plaintiffs' underlying claims at this stage, a brief discussion of the nature of those claims is warranted.

---

policy.") (emphasis added). At most, these cases suggest that some courts apply an "intermediate" approach following limited discovery, in which they weigh the sufficiency of affidavits against any competing evidence produced in the targeted discovery period. Even assuming that such an approach is appropriate, it makes no difference here, because the defendants have not introduced *any* evidence in support of their Response in opposition to the Motion to Certify.

Although the FLSA generally requires employers to pay overtime wages, certain employees, including those covered by the "Motor Carrier Act" exemption (FLSA § 13(b)(1)) (hereinafter, "MCA Exemption"), are exempted from the overtime pay requirement. Under the MCA Exemption, any employee who falls within the authority of the Secretary of Transportation's authority to regulate under the Motor Carrier Act ("MCA") – whether or not the Secretary has actually exercised that power – is exempt from the overtime pay requirement. *See Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970); *Baez v. Wells Fargo Fargo Armored Serv. Corp.*, 938 F.2d 180, 181 n.2 (11th Cir. 1991).

To fall within the Secretary's authority to regulate, the employee must (1) be employed by a "motor carrier" or "motor private carrier" as defined by the MCA, (2) affect highway safety, and (3) be involved in "interstate commerce" as defined by the MCA. *See* 49 U.S.C. §§ 13102(13) and (15); 29 C.F.R. § 782.2(a); *Baez*, 938 F.2d at 181; *see also Baird*, 425 F.2d at 410. As is relevant here, a "motor private carrier" must, among other things, transport property by "motor vehicle," which the MCA originally defined broadly to include all drivers operating in interstate commerce, regardless of the weight of the vehicle driven. *See Thompson v. Bruister and Assocs., Inc.*, 2013 WL 1092218, at *1 (M.D. Tenn. Mar. 15, 2013). However, under the 2005 Safe, Accountable, Flexible, Efficient Transportation Equity Act ("SAFETEA-LU") and the 2008 SAFETEA-LU Technical Corrections Act, Congress restricted the scope of the MCA Exemption to motor vehicles having a gross vehicle weight rating ("GVWR") of 10,001 pounds or more. *See Garza v. Smith Int'l, Inc.*, 2011 WL 835820, at *3 (S.D. Tex. Mar. 7, 2011). Thus, the MCA Exemption to the FLSA no longer applies to drivers operating motor vehicles that weigh 10,000 pounds or less. *Id.*

On the merits, the defendants' position is that they were not, and are not, required to pay the loaders overtime under the FLSA because the MCA Exemption applies to the loaders. In their Second Amended Complaint, the plaintiffs allege that they loaded or unloaded vehicles with a GVWR *under* 10,001 pounds "at least part of every work week," which the plaintiffs contend thereby entitled them to overtime coverage pursuant to DOL Field Assistance Bulletin No. 2010-2 (Nov. 2, 2010). (*See* 2d Am. Compl. ¶¶ 31-32.)[4] The plaintiffs also allege that their activities did not "affect highway safety," because they received no safety equipment training, were not required to have experience in "safe loading" techniques, had no discretion in the manner of loading, and the freight loaded was so light that the manner of its loading did not adversely affect the safety of the trucks' operations. (*Id.* ¶¶ 34-39.) In sum, whether the defendants were obligated to pay the Smyrna loaders overtime pay may ultimately turn on the resolution of at least two factual issues: (1) whether particular employees loaded trucks in a given workweek with a GVWR of 10,000 pounds or less (in which case the MCA Exemption might not apply); and/or (2) whether the loaders' job duties "affect highway safety" within the meaning of the MCA.

## II. <u>Application</u>

As an initial matter, the defendants argue that the court should ignore certain facts stated in the affidavits because (1) they contain inadmissible hearsay, and (2) are conclusory. With respect to the first point, district courts within this circuit have taken different approaches to the issue: some have found that conditional certification requires admissible evidence, whereas others

---

[4]According to the Second Amended Complaint, this bulletin clarifies that, for employees who work on vehicles both over and under the 10,001 pound threshold within a given workweek, the employee is entitled to overtime pay to the extent the employee worked over 40 hours.

have adopted a more lenient approach[5]

Here, the court will apply the more lenient approach, as it did in *Rogers*. The court's consideration of potential hearsay is relevant only to the court's preliminary inquiry into the propriety of *conditional* certification. Unlike a summary judgment motion, this inquiry is not dispositive of the merits of the case, and the court need not admit documents into evidence to determine whether there is a "modest factual showing" of substantial similarity to justify providing notice to the other loaders. Be that as it may, "affidavits submitted at the notice stage must be based on the personal knowledge of the affiant. If the Court were to conclude otherwise, affidavits submitted would not be any more probative than the bare allegations in the complaint, and the requirement of factual support would be superfluous." *White*, 236 F.R.D. at 369.

The plaintiffs' affidavits, which are based on personal knowledge, contain substantially the same averments. In most relevant part, each loader states that: (1) his job duties "consisted of loading and unloading trucks and sorting cargo from trucks at the facility of Advanced [] in Smyrna, Tennessee," (2) he received "no instruction" concerning loading trucks and "no training" as to how to safely load trucks, (3) the trucks were loaded in a "last out, first in" manner, (4) the job consisted only of manual labor, and he did not have discretion as to how to load, unload, and

---

[5]*Compare Sisson v. OhioHealth Corp.*, 2013 WL 6049028, at *6 (S.D. Ohio Nov. 14, 2013) (declining to consider knowledge gained through hearsay); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866 (S.D. Ohio 2005) (holding that only admissible evidence may be considered); *with Rogers v. HCA Health Servs. of Tenn., Inc.*, 2013 WL 3224026, at *2 (M.D. Tenn. June 25, 2013) (considering hearsay, because, "at the conditional certification stage, the Court is not concerned with the admissibility of evidence; rather, it looks for some factual baiss from which it can determine if similarly situated plaintiffs exist") (internal quotation omitted); *Jesiek v. Fire Pros. Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011); *White*, 236 F.R.D. at 367-68 ("To require more at this stage of litigation would defeat the purpose of the two-stage analysis.").

sort cargo onto/from the trucks, (5) he routinely worked over 40 hours per week but did not receive overtime pay, and (6) "based on conversations with and personal observations of other employees who sorted and/or loaded and/or unloaded cargo from trucks, I have personal knowledge" that (a) "their job duties were substantially similar to mine", (b) they were provided no instructions or training as to how trucks were to be loaded for safety or any other reason, (c) they loaded and unloaded trucks on a "last out/first in" method, and (d) they failed to receive proper overtime compensation for hours worked in excess of forty (40) hours." With respect to this last set of facts (those based on "conversations with and personal observations of other employees"), the court must presume that the facts bear the qualification that each affiant makes the representation "to the best of [his] personal knowledge." Subject to that caveat, the court finds that it is reasonable to infer from the other evidence submitted that the affiants would have made these observations and learned this information during the normal course of their employment. *See White*, 236 F.R.D. at 369.

The defendants point out that the averments are essentially identical across all of the affidavits. The defendants seem to suggest that this uniformity undermines each affiant's credibility. But the defendants' point cuts both ways: the fact that the affiants have had identical experiences as loaders and have made identical observations about other loaders strongly supports a finding that the loaders are substantially similar to each other. Moreover, the defendants have offered no evidence rebutting the affiants' averments. Under the circumstances, the court finds no basis to conclude that the affiants' sworn statements are inherently unreliable because of their relative uniformity.

Finally, the defendants argue that these facts fail to make a "modest factual showing" of

9

"substantial similarity," because (1) the affiants do not aver that the other loaders worked over 40 hours per week; and (2) resolving the merits of the MCA Exemption to the FLSA overtime requirements will require individualized investigation into the shift each individual worked on, where trucks were delivered, whether and to what degree putative loader plaintiffs exercised discretion over their work, and whether the loaders routinely worked more than 40 hours per week.

With respect to the first contention, the DOL investigation report concluded that loaders *did* routinely work over 40 hours per week. Furthermore, the affidavits state that other loaders failed to receive proper overtime compensation for hours worked over 40 hours in a week, indicating that each affiant was aware of other loaders who in fact worked over forty hours in a week in the first place. Moreover, the court-supervised notice will specify that it applies only to loaders who worked over 40 hours in a week during the relevant time frame. Finally, if it is later determined that an opt-in plaintiff did not actually work over 40 hours in a week, that plaintiff can be dismissed from the lawsuit at that time.

With respect to the second contention, it essentially relates to the merits of whether the MCA Exemption to the FLSA will apply, which is best reserved for the decertification stage under the circumstances presented here. The burden will be on the defendants to establish that the exemption applies. *Douglas v. Argo-Tech. Corp.*, 113 F.3d 67, 69 (6th Cir. 1997). Based on the affidavits, the plaintiffs have made a modest factual showing that the loaders' day-to-day job responsibilities are substantially the same and that those responsibilities did not involve activities that meaningfully affect highway safety. Although there could be relevant differences among the putative opt-in plaintiffs with respect to the application of the MCA Exemption, the defendants

have not persuaded the court that individualized inquiries would necessarily overwhelm any efficiency to be gained from certifying a collection action. The possibility that individual issues will dominate is a matter that the court can consider at the decertification stage based on a developed record. *See White*, 236 F.R.D. at 373; *Musarra*, 2008 WL 818692, at *5; *Shabazz*, 2008 WL 1730318, at *3; *Williams v. Le Chaperone Rouge*, 2007 WL 2344738, at *3.

For these reasons, the court finds that conditional certification is warranted.

### III.     Content of the Notice

Courts have authority to supervise the issuance of notice in FLSA collective actions, with the objective of "manag[ing] the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Here, in their Response, the defendants have objected to the form and manner of notice proposed by the plaintiffs in several respects.

The court finds no reason to remove the style of the case from the notice. However, subject to a few qualifications, the defendants' remaining arguments are well-taken:

(1)     In light of the DOL's conclusion that the defendants did not owe the plaintiffs overtime pay in the first place – and in the absence of any response from the plaintiffs on this point or the presentation of evidence suggesting otherwise – the court finds that the plaintiffs have not made a sufficient preliminary showing that the defendants may have *willfully* violated the FLSA for conditional certification purposes. Therefore, the time period set forth in the notice will be limited to two years back from the date of the notice.

(2)     The plaintiffs' proposed notice contains what appear to be careless typographical errors, such as references to "sales people," the "minimum wage," and payment in cash "regardless of immigration status," which have no bearing on this lawsuit. Those references must be removed.

(3) The notice and consent form should direct opt-in plaintiffs to the same attorney.

(4) The notice must be limited to employees who worked over 40 hours in a workweek. However, the court finds that the notice need not specify that it applies only to employees who worked on trucks with a GVWR below 10,001 pounds, given that the trucks presumably varied in weight and the plaintiffs would not necessarily know the weight of the trucks they loaded or unloaded.

(5) In the absence of an objection from the plaintiffs, the court will exercise its discretion to permit the defendants to insert language containing a statement of defense in the form set forth in the defendants' Response. (*See* Docket No. 59 at p. 13.)

(6) The plaintiffs have failed to demonstrate good cause to post the notice at the defendants' respective places of business. Therefore, the court finds that notice need only be sent by first-class mail. *See Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011) (internal quotations omitted); *see also Lawrence v. Maxim Healthcare Servs., Inc.*, 2013 WL 5566668 (N.D. Ohio Oct. 9, 2013).

(7) The plaintiffs have not shown that the production of social security numbers is necessary in this case. *See Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 215 (S.D. Ohio 2011).

(8) The plaintiffs have requested 90 days for potential opt-in plaintiffs to opt into the lawsuit, whereas the defendants have requested that this time frame be limited to 30 days. Under the circumstances presented here, the court will limit the opt-in period to 45 days.

In the interest of judicial economy, the court will order the parties to confer and file an agreed-upon notice consistent with the court's findings herein within 20 days.

**IV.** **Conclusion**

Subject to the qualifications set forth herein, the plaintiffs' Motion to Certify will be granted. The court will (1) conditionally certify a collective action consisting of all current and former employees who worked as "loaders" and/or "sorters" at the Smyrna facility at any time within the last two years and who worked over 40 hours in at least one workweek within that

time frame; (2) order the defendants to provide the plaintiffs with names and last known addresses of these employees within 20 days; and (3) require the parties to confer and file agreed-upon notice and consent forms within 20 days.

      An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge